Approved: _____
ANDREW JONES
Assistant United States Attorney

Before: THE HONORABLE BARBARA MOSES
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

        - v. -                    :

JOVANNY CORNIELLE, and            :
JUNIOR PUJOLS RODRIGUEZ,          :

                     Defendants.  :

- - - - - - - - - - - - - - - - - x

**22 MAG 8844**

**COMPLAINT**

Violation of
21 U.S.C. § 846

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

    RICHARD LIGHT, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration ("DEA"), and charges as follows:

**COUNT ONE**
(Narcotics Trafficking Conspiracy)

    1. In or about October and November 2022, in the Southern District of New York and elsewhere, JOVANNY CORNIELLE and JUNIOR PUJOLS RODRIGUEZ, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

    2. It was a part and an object of the conspiracy that JOVANNY CORNIELLE and JUNIOR PUJOLS RODRIGUEZ, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

    3. The controlled substance that JOVANNY CORNIELLE and JUNIOR PUJOLS RODRIGUEZ, the defendants, conspired to distribute and possess with intent to distribute was 400 grams and more of mixtures and substances containing a detectable amount of

fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Task Force Officer with the DEA New York Drug Enforcement Task Force, and I have been personally involved in this investigation. This affidavit is based on my investigation, my conversations with other law enforcement officers and other individuals, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my training and experience, my participation in this investigation, including my personal observations, my conversations with two confidential sources working at the direction of law enforcement ("CS-1" and "CS-2"),[1] my review of materials provided by CS-1 and CS-2, including recordings of the communications described below made by CS-1 and CS-2 at the direction of law enforcement, my conversations with other law enforcement agents, and my review of law enforcement reports and records, I have learned the following, among other things:

a. In or about late October 2022, in a series of recorded phone calls and text messages,[2] CS-1 communicated with a

---

[1] CS-1 has been assisting the DEA in connection with this investigation and several other investigations in exchange for compensation. The CS-1 has provided information to the DEA that has been corroborated and has proven reliable.

CS-2 has been arrested and charged with violations of federal narcotics trafficking and firearms laws. CS-2's charges remain pending, and CS-2 is working with law enforcement in hopes of receiving leniency at sentencing for those offenses. Information provided by CS-2 has been corroborated and found reliable.

[2] All recorded communications, including recorded voice and text communications, referenced in this Complaint were in Spanish. CS-1, CS-2, and/or Spanish-speaking law enforcement agents have

member of a drug trafficking organization that is based outside of the United States ("CC-1"). During these conversations, among other things, CC-1 gave CS-1 a phone number for a person who CS-1 understood was based in New York and would supply heroin to CS-1 (the "Supplier Number"). As described more below, the Supplier Number is the contact number for a phone used by JOVANNY CORNIELLE, the defendant.

    b.  On or about October 26, 2022, CS-1 contacted CORNIELLE at the Supplier Number, and CORNIELLE and CS-1 agreed to meet that evening. On the evening of October 26, 2022, CORNIELLE and a second person who was later identified as JUNIOR PUJOLS RODRIGUEZ, the defendant, met CS-1 and CS-2 in Manhattan. Law enforcement agents conducted surveillance of the meeting, and the meeting was audio recorded. During the meeting, CS-1 and CS-2 discussed with CORNIELLE and PUJOLS RODRIGUEZ the sale of narcotics. CS-1 understood the narcotic being discussed was heroin based on, among other things, information from CC-1 that the user of the Supplier Phone (i.e., CORNIELLE) sells heroin.

    c.  During the meeting, CORNIELLE took the leading role for the heroin traffickers. CORNIELLE informed CS-1 and CS-2, in substance and in part, that CORNIELLE operates a "mill." Based on my training and experience investigating narcotics traffickers, I understand that a mill is a location where kilogram quantities of narcotics are broken down into smaller doses. And as it relates to heroin trafficking specifically, I understand that "milled" heroin is frequently sold to other narcotics traffickers in what are called "bricks." A "brick" is equal 50 individual doses of heroin packaged in glassine bags.

    d.  During the meeting on or about October 26, 2022, CORNIELLE and PUJOLS RODRIGUEZ agreed to sell CS-1 and CS-2 approximately 650 bricks of heroin (approximately 32,500 glassine bags) and 1 kilogram of heroin that had not been broken down into glassines. The agreed price was approximately $325 per brick and $30,000 for the kilogram, for a total of approximately $241,250. CORNIELLE told CS-1 and CS-2, in substance and in part, that CORNIELLE needed a few days to mill the heroin he agreed to sell.

    e.  Following the October 26, 2022 meeting, CORNIELLE and CS-1 remained in communication by telephone. On or about November 1, 2022, CORNIELLE confirmed that the heroin would be ready on November 2, 2022.

---

informed me of the substance of the communications described in the Complaint.

3

f.  On or about November 2, 2022, at approximately 10:00 A.M., CS-1 contacted CORNIELLE to confirm the deal was still happening as scheduled. CORNIELLE responded, in substance and in part, that it was, and that CORNIELLE would send CS-1 an address soon for where the deal would happen. At approximately 10:30 A.M., CORNIELLE informed CS-1 that he would be providing CS-1 approximately 600 bricks of heroin (rather than 650) and would not be providing the additional kilogram. CORNIELLE also gave CS-1 an address for where the handoff of the narcotics would happen ("Location-1"). CS-1 and CORNIELLE agreed to meet at a nearby second address ("Location-2") where CS-1 would pay CORNIELLE, after CS-2 received the narcotics from PUJOLS RODRIGUEZ at Location-1. CS-1 was to pay CORNIELLE $130,000 for 400 bricks of heroin, and the remaining 200 bricks of heroin would be provided on consignment.

g.  After CORNIELLE met CS-1 at Location-2, CORNIELLE made a video call to PUJOLS RODRIGUEZ, which CS-1 observed. During the video call, PUJOLS RODRIGUEZ was inside what appeared to an apartment with narcotics and narcotics paraphernalia visible in the room. PUJOLS RODRIGUEZ asked CORNIELLE, in substance and in part, which packages of narcotics he should bring to Location-1, and CORNIELLE identified the narcotics for the deal. CS-1 provided a description of a car near Location-2 where CS-2 was waiting to receive the narcotics.

h.  At approximately 11:30 A.M., while conducting surveillance near Location-1, agents observed PUJOLS RODRIGUEZ exit a nearby apartment building (the "Apartment Building") with a rolling duffle bag. PUJOLS RODRIGUEZ took the duffle bag to CS-2's car and got inside of the car. CS-2 confirmed the presence of narcotics inside the duffle bag, and law enforcement agents subsequently arrested CORNIELLE and PUJOLS RODRIGUEZ. At the time of his arrest, CORNIELLE was in possession of three cellphones, including one that had used the Supplier Number to contact CS-1.

i.  During the arrest of PUJOLS RODRIGUEZ, the duffle bag was seized and searched. Inside the duffle bag, agents found approximately 12 bundles that were packaged consistent with practices for packaging narcotics. Six of the bundles were marked "Total," and the remaining six were marked "V Power." The 12 bundles collectively contain approximately 30,000 glassine bags.

j.  Following his arrest, PUJOLS RODRIGUEZ was advised of his *Miranda* rights, waived his *Miranda* rights, and agreed to speak to law enforcement agents. Among other things, PUJOLS RODRIGUEZ stated, in substance and in part, that Apartment 5C of the Apartment Building was the heroin mill location and that

4

keys PUJOLS RODRIGUEZ possessed were for the apartment. PUJOLS RODRIGUEZ consented to the search of Apartment 5C and signed a consent form.

k. During a search of Apartment 5C, agents seized, among other things approximately 40,000 additional glassine bags that contained what appeared to be narcotics, approximately $30,000 cash, and various items of narcotics trafficking paraphernalia. The additional narcotics found in the apartment were not bundled and were principally marked with the word "Chase."

l. Field testing for the presence of narcotics was later performed on samples from the "Total," "V Power," and "Chase" batches of glassine bags. All three batches tested positive for the presences of fentanyl and heroin. In total, approximately 70,000 individual doses of the fentanyl-laced heroin were recovered. In my training and experience, the total approximate weight of the doses is likely between approximately 3.5 kilograms and 7 kilograms.

m. An image of the seized fentanyl-laced heroin is below. The "Total" and "V Power" doses that CORNIELLE and PUJOLS RODRIGUEZ arranged to sell CS-1 and CS-2 are on the left and right sides of the table, respectively. The "Chase" doses seized from inside the mill apartment are in the bag in the middle of the table.



WHEREFORE, I respectfully request that JOVANNY CORNIELLE and JUNIOR PUJOLS RODRIGUEZ, the defendants, be imprisoned or bailed, as the case may be.

Richard Light
Task Force Officer, DEA

Sworn to before me on
November 3, 2022.

THE HONORABLE BARBARA MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK